# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

### CRIMINAL CASE NO. 3:09cr19

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| | ) | |
| **vs.** | ) | **O R D E R** |
| | ) | |
| | ) | |
| **CHARLES ALLEN HALL.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on the Defendant's Objections to Conclusions of Law and Recommendations Denying Defendant's Motion to Suppress [Doc. 39].

Pursuant to standing orders of designation and 28 U.S.C. §636(b), the undersigned referred the Defendant's Motion to Suppress Evidence [Doc. 11] to the Magistrate Judge for a recommendation as to disposition. The Magistrate Judge filed a Memorandum and Recommendation on September 2, 2009 setting forth his Findings of Fact and Conclusions of Law and recommending that the Defendant's motion be denied.  [Doc. 38]. The Defendant timely filed objections to the Conclusions of Law and the

Recommendation that the motion be denied. [Doc. 39]. No objections were filed to the Magistrate Judge's Findings of Fact.

## STANDARD OF REVIEW

Federal Rule of Criminal Procedure 59(b)(1) provides that a district court may refer a motion to suppress to a magistrate judge for a recommendation. If a party timely files "specific written objections" to the proposed recommendations, the "district judge must consider *de novo* any objection to the magistrate judge's recommendation." Fed.R.Crim.P. 59(b)(3). As stated in the Rule, "[p]arties filing objections must specifically identify those findings objected to" in order to obtain plenary, *de novo* review. Battle v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987), *overruled on other grounds* Douglass v. United Ervs. Auto. Ass'n, 79 F.3d 1415 (5th Cir. 1996); *accord*, Thomas v. Westinghouse Savannah River Co., 21 F.Supp.2d 551, 560 (D.S.C. 1997), *affirmed in part, dismissed in part* 162 F.3d 1155 (4th Cir. 1998).

Here, the Defendant has not objected to the Magistrate Judge's Findings of Fact and the undersigned therefore adopts those findings as set forth in pages three through eight of the Memorandum and

Recommendation. Unless otherwise specified, the factual background set forth herein comes from the Magistrate Judge's Findings of Fact. Nonetheless, the Court has carefully examined the record, including the transcript of the suppression hearings, and notes that the Findings of Fact are deserving of adoption by this Court.

## PROCEDURAL AND FACTUAL BACKGROUND

The Defendant is charged in a one count bill of indictment with being a felon in possession of two firearms, in violation of 18 U.S.C. §922(g)(1). [Doc. 1]. The prior felony conviction listed in the indictment was aiding and abetting the assault with a deadly weapon of a law enforcement officer. [Id.].

The federal indictment stems from an investigation by state police of the Defendant's alleged involvement with the theft of catalytic converters. On April 8, 2008, Officer Brent Helms of the Charlotte Mecklenburg Police Department (CMPD) obtained an arrest warrant from a state magistrate for a misdemeanor theft charge against the Defendant. Officer Helms, who knew the Defendant to be a repeated felon, had been investigating his purported theft of catalytic converters.

On that same day, Officer Helms, along with three other officers, went to the Defendant's home to execute the arrest warrant. Helms, who knew the location of the Defendant's home from prior criminal arrests and investigations, recognized the Defendant's vehicle in the driveway. During prior surveillance, the Defendant had been seen by law enforcement driving this vehicle. [Tr. 20]. Two officers went to the front door where they knocked and announced their presence while two other officers went to the back door where they followed the same procedure. No response was received at either location. The back door was opened briefly by a man; the officers asked for Charles Hall; and the man shut the door and went back inside. [Tr. 42]. After that man, Thomas Phillips, closed the door and retreated to the interior of the house, the officers repeated the knock and announce procedure at both the front and back doors. No response, however, came from within. This portion of the execution of the warrant lasted about thirty to forty-five minutes. [Tr. 20].

At this point, Officer Helms realized that he did not have a service copy of the arrest warrant and he left the scene for about forty-five minutes to retrieve a service copy. He testified that the officers could not enter the residence to serve the arrest warrant without a service copy thereof.

During his absence, the other three officers remained at the residence. Upon his return, Officer Helms was told that no response had been heard from inside the residence and no one had exited.

Throughout this time, Officer Helms had been in contact with his superiors, all of whom knew the Defendant and his criminal history. [Tr. 20-24]. Captain Leonard of the CMPD arrived at the scene and concluded, based on the Defendant's criminal history, to request assistance from the SWAT team. [Tr. 32 "But as soon as they realized who we were dealing with and they were familiar with him and I knew his history and the totality of it, they decided to call SWAT."]; [Tr. 61]. Officer Helms personally knew that the Defendant had fifteen prior felony convictions and over one hundred arrests as of the day the arrest warrant was executed. [Tr. 63]. Officer James Hetrick of the SWAT team testified that they are not called into a situation absent "extenuating circumstances" such as a suspect who has previously assaulted law enforcement officers. [Tr. 83].

The SWAT team arrived and began attempts to persuade anyone inside the house to exit. The Defendant's wife, Sheena Hall, her two children and Thomas Phillips left the house through the front door. Sheena Hall told the officers that her husband was not at home. SWAT team

member Hetrick asked Phillips if the Defendant was inside the house. [Tr. 79]. Phillips told them that the Defendant was hiding inside the house and had stated that he "was not going back to jail." [Tr. 27-28]. Phillips "was real adamant about Mr. Hall being inside the residence. He said he's in there." [Tr. 79-80]. Phillips later denied making these statements to the police.[1]

The SWAT team spent several hours attempting to persuade the Defendant to come outside by using a loudspeaker. After no response, SWAT team members used a bulletproof vehicle to approach the house in order to place cameras inside. The team broke windows in the house in order to insert the cameras which scanned for the presence of any person who could pose a danger to the police. No such person was detected. When asked why the SWAT team spent so much time at the scene before

_____

[1]The Court has adopted the findings of the Magistrate Judge, as there were no objections to those findings. This Court finds and the Magistrate Judge found the testimony of the officers at the suppression hearings more credible than that of Phillips who denied making the statement to the officers. "[I]t is the role of the district court to observe witnesses and weigh their credibility during a pre-trial motion to suppress." United States v. Abu Ali, 528 F.3d 210, 232 (4th Cir. 2008), certiorari denied 129 S.Ct. 1312, 173 L.Ed.2d 584 (2009) (citation omitted); United States v. Harris, 2009 WL 2562741 (4th Cir. 2009) (credibility determinations made in connection with motion to suppress are not reviewed); United States v. Daniels, 308 Fed.Appx. 658, 660 (4th Cir. 2009), certiorari denied 129 S.Ct. 2029, 173 L.Ed.2d 1117 (2009) ("Because the district court's ruling was ultimately based on credibility determinations that are not subject to appellate review, we find the district court did not err in denying Daniels' motion to suppress.") (citation omitted).

actually entering the house, team member Timothy Parker testified that "We want preservation of life at all costs, ours, including the suspect or anybody else." [Tr. 167].

The SWAT team members then entered the house and conducted a thorough search for the Defendant but did not find him.  They did find a rifle protruding from underneath a pile of clothing. [ Tr. 112; Tr. 103 "saw the butt of a gun up against the wall."].  During the search for the Defendant, CMPD Officer Parker entered a child's bedroom. [Tr. 153-54].  He removed a grate over an air duct which was large enough for a person to hide in and found another firearm inside the duct. [Tr. 152 "In the last 13 years I've found people hiding in drawers, under clothes, ... in mattresses, in between the mattresses."].  These two firearms form the basis of the federal indictment.

When the initial search did not uncover the Defendant, SWAT team members again asked Phillips if the Defendant was inside and they were assured that he had been.  Other officers had maintained outside surveillance and had not seen anyone exit.

SWAT team members McKinney and Lester went into the attic of the house to see if the Defendant was hiding there.  After about ten minutes,

Officer McKinney noticed that there was no insulation next to the chimney and when he pulled up two strips of tar paper next to the chimney, he found the Defendant hiding in a crawl space next to the chimney. [Tr. 128]. When told to raise his hands, the Defendant swore and spat at the officers. He was ultimately removed from the crawl space but physically resisted arrest and spat at several more officers. Removing the Defendant took some time due to the presence of nails and wires protruding from boards in the wall. In fact, the Defendant was unable to exit the space in the same manner as he had slipped in, requiring the removal of a portion of the wall. The Defendant was later treated at a local hospital as were several officers who were required to submit to regular blood testing for a period of months to insure they did not contract an infectious disease as a result of being spat upon by the Defendant.

## DISCUSSION

**The misdemeanor arrest warrant was sufficient to authorize officers to enter the residence and search for the Defendant.**

The Defendant's argument is based on the Fourth Amendment.

The right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable

cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

The Magistrate Judge found that arresting officers do not violate a suspect's Fourth Amendment rights by entering a residence to arrest a suspect based on a misdemeanor arrest warrant. The Defendant objects, stating that only a felony arrest warrant provides such authority and even then only if the officers reasonably believe the suspect lives in the home and is present at the time.

> Although there is a presumption of invalidity attaching to warrantless entry of a residence, "for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." The [issue is] whether a misdemeanor [arrest] warrant ... - as opposed to a felony arrest warrant - is sufficient to permit entry into a residence under Payton [v. New York, 445 U.S. 573, 603, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980)].[2] The Second Circuit, however, in United States v. Spencer, [684 F.2d 220, 223 (2nd Cir. 1982), *cert. denied* 459 U.S. 1109, 103 S.Ct. 738, 74 L.Ed.2d 960 (1983)] persuasively reasoned that the Court's decision in Payton permits entry into a residence to effectuate a valid arrest warrant, regardless of the precise nature of the underlying warrant.

---

[2]In Payton, the arrest warrant was for a felony. The Defendant has extracted from that fact an argument that the case stands for the proposition that only a felony arrest warrant justifies entry into a defendant's home. That is not the holding of the case.

9

United States v. Gooch, 506 F.3d 1156, 1158-59 (9th Cir. 2007), *cert. denied* 128 S.Ct. 1922, 170 L.Ed.2d 782 (2008).

Moreover, contrary to the Defendant's position, "[t]he holding in Spencer, permitting entry into a residence based on a misdemeanor arrest warrant ... has been followed in similar cases with near uniformity by the federal courts." Id., at n.1 (citations omitted); *accord*, Shreve v. Jessamine County Fiscal Court, 453 F.3d 681, 688-89 (6th Cir. 2006) ("Finally, the deputies acted lawfully when they broke into Shreve's house and searched it to arrest her, notwithstanding the fact that the arrest was for a misdemeanor."); United States v. Clayton, 210 F.3d 841, 843 (8th Cir. 2000); Merring v. City of Carbondale, Pennsylvania, 558 F.Supp.2d 540, 546 (M.D.Pa. 2008); Smith v. Tolley, 960 F.Supp. 977, 991 (E.D.Va. 1997) ("[I]t is irrelevant whether the underlying offense for which the arrest warrant is secured is a felony or a misdemeanor."). In sum, "[a] valid arrest warrant, whether for a felony or a misdemeanor, carries with it the authority to conduct a forcible entry so long as the police have a reasonable belief that the suspect resides at the place to be entered and is currently present there." Ward v. Moore, 414 F.3d 968, 971 (8th Cir. 2005).

It is noteworthy that the only case cited in support of the Defendant's

interpretation of <u>Payton</u> is <u>O'Rourke v. City of Norman</u>, 875 F.2d 1465 (10th Cir. 1989), *cert. denied* 493 U.S. 918, 110 S.Ct. 280, 107 L.Ed.2d 260 (1989). <u>O'Rourke</u> involved the nighttime execution of a daytime bench warrant at a location which was known to be the residence of the emancipated suspect's parents, but which was not known to be her home. The case turned on the fact that the warrant was not authorized for execution at night, not on the nature of the underlying offense. LaFave, 2 Search & Seizure, §4.7(b) n.31 (4th ed.). In citing this case, defense counsel ignored the body of law holding that entry into a residence based on a misdemeanor arrest warrant "has been followed in similar cases with near uniformity by the federal courts." <u>Gooch</u>, 506 F.3d at 1159 n.1. In fact, the <u>Gooch</u> court cited <u>United States v. Ray</u>, 199 F.Supp.2d 1104, 1112-13 (D.Kan. 2002), which followed Tenth Circuit precedent, <u>Howard v. Dickerson</u>, 34 F.3d 978, 981 (10th Cir. 1994), in which it was noted that "federal law require[s] a warrant before arresting an individual at home for a misdemeanor." *Accord*, <u>United States v. Meindl</u>, 83 F.Supp.2d 1207 (D.Kan. 1999) (forced entry into defendant's home to execute misdemeanor arrest warrant was proper). Indeed, the Defendant's objection to the Memorandum and Recommendation on this issue is limited to one sentence. The Court rejects the Defendant's argument and the objection is

overruled.

**The Magistrate Judge did not err in concluding that the officers had reason to believe the Defendant was in the residence.**

In the motion to suppress, the Defendant argued that the "Supreme Court has not defined the 'reason to believe' standard," but noted that the Ninth Circuit "has equated the reason to believe standard with the probable cause standard." [Doc. 11, at 5]. Defense counsel made no statement as to the standard applied in the Fourth Circuit.

The Magistrate Judge concluded that the officers had reason to believe the Defendant was inside the residence because (1) from past arrests, the officers knew this address was the Defendant's residence; (2) the officers recognized the Defendant's vehicle which was parked in the driveway; (3) the Defendant's wife and children subsequently exited the home; (4) a friend of the family also left the residence; and (5) that friend told the officers that the Defendant was hiding inside the house because he did not want to go back to jail.

The Defendant now claims that the Magistrate Judge committed error by failing to define the standard under which he evaluated "reason to believe." According to the objection, the Magistrate Judge failed to articulate whether

he used the purported Ninth Circuit standard of probable cause or the purported Sixth Circuit standard of reasonable suspicion. [Doc. 39, at 11]. Neither position was argued in the motion to suppress. As previously noted, however, defense counsel does not state which standard has been applied in the Fourth Circuit. Nonetheless, "as part of its obligation to determine *de novo* any issue to which proper objection is made, a district court is required to consider all arguments directed to that issue, regardless of whether they were raised before the magistrate." United States v. George, 971 F.2d 1113, 1118 (4th Cir. 1992); *accord*, Cooper v. Ward, 149 F.3d 1167 (4th Cir. 1998).

Although the Defendant disputes the validity of the arrest warrant, he does not dispute that the officers had an arrest warrant at the time of entry. Nor does he dispute that he actually resided at the location. Payton, 445 U.S. at 603. At least one court within the Fourth Circuit has noted that

> [t]he Supreme Court did not define the "reason to believe" standard which it articulated in Payton, and the circuits have not provided much guidance. Hence, it remains unsettled whether "reason to believe" is synonymous with "probable cause" or whether the Supreme Court intended for the "reason to believe" standard to involve a lesser degree of certainty than is required to establish probable cause.
>
> ...
> Considering, as the touchstone, the "reason to believe" language of Payton in perspective of Payton's requirement of an arrest warrant supported by probable cause, and taking into account the

singular sanctity enjoyed by the home in Fourth Amendment jurisprudence, it is preferable to require, as did the Eleventh Circuit [] and the Second Circuit [], that the serving officer have a *reasonable belief* that the suspect is within his or her residence before entering to execute an arrest warrant. This reasonable belief, of course, must be based on common sense factors informed by the experience of police officers and the circumstances encountered in association with efforts, current and past, to serve the warrant at issue. And, the reasonableness of the belief must be tested against an objective measurement of the totality of facts known, or reasonably knowable, to the officers when entry to execute the warrant occurs.

Smith v. Tolley, 960 F.Supp. at 987-88, (*citing* United States v. Lauter, 57 F.3d 212 (2nd Cir. 1995)) (emphasis in original); see also, United States v. Magluta, 44 F.3d 1530 (11th Cir. 1995), *cert. denied* 516 U.S. 869, 116 S.Ct. 189, 133 L.Ed.2d 126 (1995).

It is true that the Circuits remain divided on the issue and that the Fourth Circuit has failed to weigh in conclusively.[3] See, United States v. Jackson, 576 F.3d 465 (7th Cir. 2009) (collecting cases); United States v. Thomas, 429 F.3d 282, 286 (D.C.Cir. 2005), *cert. denied* 549 U.S. 1055, 127 S.Ct. 660, 166 L.Ed.2d 519 (2006) ("reasonable belief" requires less than probable cause); *accord*, Valdez v. McPheters, 172 F.3d 1220, 1225-26 (10th Cir. 1999); United States v. Route, 104 F.3d 59, 62 (5th Cir. 1997), *cert. denied* 521 U.S. 1109,

---

[3]See, *e.g.*, United States v. Morgan, 972 F.2d 343 (4th Cir. 1992) (applying only reasonable belief standard).

117 S.Ct. 2491, 138 L.Ed.2d 998 (1997); United States v. Risse, 83 F.3d 212, 216 (8th Cir. 1996); United States v. Lauter, 57 F.3d 212, 215 (2nd Cir. 1995); Magluta, 44 F.3d at 1535; but see, United States v. Hardin, 539 F.3d 404, 416 n.6 (6th Cir. 2008) ("reasonable belief" equal to "probable cause"); United States v. Barrera, 464 F.3d 496, 501 (5th Cir. 2006), *cert. denied* 550 U.S. 937, 127 S.Ct. 2247, 167 L.Ed.2d 1096 (2007) ("reasonable belief" is a fluid concept); United States v. Gorman, 314 F.3d 1105, 1111 (9th Cir. 2002) (same as probable cause). Like the Jackson court, this Court does not need to adopt either view because "in the present case the police had enough evidence to easily satisfy a probable cause standard." Jackson, 576 F.3d at 469.

Probable cause is defined as the "'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person ... in believing ... that the suspect has committed, is committing, or is about to commit an offense.'" United States v. Williams, 10 F.3d 1070, 1073-74 (4th Cir. 1993), *cert. denied* 513 U.S. 926, 115 S.Ct. 313, 130 L.Ed.2d 276 (1994), *quoting* Michigan v. DeFillipo, 443 U.S. 31, 37, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979). In the context of this motion to suppress, probable cause would mean the officers had facts and circumstances within their knowledge sufficient to

warrant a prudent person to believe the Defendant was inside the house.  In determining whether probable cause exists, courts examine "the totality of circumstances" known to the arresting officer at the time of execution of the arrest warrant.  United States v. Al-Talib, 55 F.3d 923, 931 (4th Cir. 1995).

The Defendant does not dispute that the house was his actual residence.  He also does not dispute that the car in the driveway was his and admits that at least some of the officers on the scene had seen the Defendant driving the car. [Doc. 39, at 11].  See, United States v. Ginglen, 467 F.3d 1071 (7th Cir. 2006) (car matching that driven by robber parked in the defendant's driveway established probable cause); United States v. Ellis, 125 Fed.Appx. 691 (6th Cir. 2005) (vehicle parked in driveway registered to person with same last name as defendant); United States v. Winkler, 2008 WL 5136463 (E.D.Tenn. 2008) (car known to belong to defendant parked outside his house establishes probable cause).

When Phillips came out of the house, he told the officers that the Defendant was inside hiding because the Defendant did not want to go back to jail.  The Defendant did not object to this finding of fact.  United States v. Graham, 553 F.3d 6, 13-14 (1st Cir. 2009), cert. denied 129 S.Ct. 2419, 173 L.Ed.2d 1323 (2009) (immediately before entering apartment, police showed

suspect's picture to neighbor who pointed towards apartment); <u>Clayton</u>, 210 F.3d at 844 (statement by occupant of the house that suspect was inside created reasonable belief that the suspect was inside). Even applying a probable cause standard, the officers had ample reason to believe that the Defendant was inside the house which they knew to be his personal residence.

The Defendant also objects to the amount of time spent by the officers in effecting the entry than to the reasonableness of their belief that the Defendant was inside the house. This, however, overlooks the totality of the circumstances faced by the officers during the execution of the warrant. They were familiar with the Defendant and with the fact that he had previously been involved in an assault with a deadly weapon on a law enforcement officer. Moreover, they were told the Defendant had resolved not to go back to jail. In the interest of safety, the extended time spent by the officers was warranted. The Court rejects the Defendant's arguments and this objection to the Memorandum and Recommendation is overruled.

**The Magistrate Judge did not err in concluding that the duration and scope of the search was legal.**

The Defendant objects to the Magistrate Judge's conclusion that the five

or six hours duration required for the execution of the arrest warrant as well as the scope of the search for the Defendant was reasonable under the circumstances.

"In Warden v. Hayden, [387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967)], the Supreme Court made clear the unquestioned authority of police lawfully within premises for the purposes of making an arrest to search those premises to the extent necessary to find the individual to be arrested." LaFave, 3 Search and Seizure, at §6.3(a).  As noted *infra*, the police here were lawfully within the house with an arrest warrant for the purpose of arresting the Defendant.  The duration of the execution of that warrant was caused solely by the Defendant who hid from the authorities.

Likewise, it is beyond dispute that during the execution of an arrest warrant, law enforcement officers are authorized to perform a protective sweep of spaces in a home where a person posing a danger to the police could hide and launch an attack as long as the officers have a reasonable belief that the area swept could hold such a person.  Maryland v. Buie, 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990).  As noted above, the officers here had a reasonable belief that the Defendant was not just in the house but that he was hiding from the police.  United States v. Williamson,

250 Fed.Appx. 532, 533 (4th Cir. 2007) (officers could continue "to search anywhere in the house that [the suspect] might have been found.") (*quoting* Buie, 494 U.S. at 330).  He was also known to have a history of violence.  The Defendant's argument is based on cases in which the sweep occurred after the arrest whereas here the sweep was performed in an attempt to locate the Defendant's hiding place.  Thus, the sweep here lasted "no longer than [was] necessary to dispel the reasonable suspicion of danger and in any event no longer than it [took] to complete the arrest and depart the premises."  Buie, 494 U.S. at 335-36.  "The officers' actions were also justified as an attempt to locate [the Defendant]," who had been reported to be hiding inside the house.  United States v. Smith, 131 F.3d 1392, 1396 (10th Cir. 1997), *cert. denied* 522 U.S. 1141, 118 S.Ct. 1109, 140 L.Ed.2d 162 (1998).  One member of the SWAT team testified that their initial sweep took about thirty to forty minutes. [Tr. 169].  After insuring that the open areas in the house were clear, SWAT began a secondary search and located the Defendant "within minutes." [Id.].  The Magistrate Judge aptly noted that the duration of the execution of the arrest warrant was caused by the Defendant's hiding in order to avoid arrest.  He also pointed out that the Defendant had a lengthy criminal history involving some violence, thus warranting additional safety

precautions.

The Defendant argues that the search conducted during the sweep was a search for evidence, not a search for the Defendant. He claims that the use of the cameras inside the house was an attempt to find evidence, an argument he claims is reinforced by the fact that the cameras were also used in the attic. The Magistrate Judge found without objection and this Court finds the testimony of the officers credible that the cameras were used to search for the Defendant or any other person who could pose a danger to the officers upon entry into the house. "Once inside, the Taskforce members were entitled to search anywhere [the Defendant] might have been hiding." United States v. Munoz, 150 F.3d 401, 412 (5th Cir. 1998), *cert. denied sub nom* Gonzalez Munoz v. United States, 525 U.S. 1112, 119 S.Ct. 887, 142 L.Ed.2d 786 (1999) (officers properly pushed sofa away from wall to look for suspect). The Magistrate Judge found without objection and this Court finds credible the officers' testimony that they saw piles of clothing in the bedroom which could hide an individual. Id.; United States v. Lauter, 57 F.3d at 213-14, 216-17 (looking for suspect in three-foot space between bed and wall because someone could hide there). The fact that they saw the butt of a rifle in plain view does not transform their search for the Defendant into a search for

evidence.  <u>United States v. Morgan</u>, 972 F.2d 343 (table) at **2 (4th Cir. 1992)

("The officer also reasonably believed Morgan might be hiding under the bed.

Instead they found the shotgun in plain view and properly seized it.").  It was

also appropriate for the officers to open closets to see if the Defendant was

hiding inside.  <u>United States v. Beck</u>, 729 F.2d 1329, 1332 (11 Cir. 1984),

*cert. denied* 469 U.S. 981, 105 S.Ct. 383, 83 L.Ed.2d 318 (1984) ("Of course,

Beck could hide in a closet, therefore it was reasonable to look for him

there.").  Since the Defendant was known to be hiding, it was also appropriate

for the officer to look inside an air duct large enough for a person to fit into.

<u>Id</u>.

The Defendant claims that the officers exceeded the bounds of

appropriate search by going into the attic and removing the tar paper.  The

officers, however, knew the Defendant was in the house and that he was

hiding.  They had already searched the other rooms for the known felon and

had found firearms.  "[O]nly a thorough search of the house for persons and

weapons could have insured that [the Defendant] was the only man present

and that the police had control of all weapons which could be used against

them or to effect an escape."  <u>Hayden</u>, 387 U.S. at  299.  "The permissible

scope of search must, therefore, at the least, be as broad as may reasonably

be necessary to prevent the dangers that the suspect at large in the house may resist or escape." Id.

The Defendant also objects to the Magistrate Judge's conclusion that the firearms found during the sweep were in plain view. "[T]he plain-view doctrine authorizes warrantless seizures of incriminating evidence when (1) the officer is lawfully in a place from which the object may be plainly viewed; (2) the officer has a lawful right of access to the object itself; and (3) the object's incriminating character is immediately apparent." United States v. Jackson, 131 F.3d 1105, 1109 (4th Cir. 1997), cert. denied 528 U.S. 945, 120 S.Ct. 369, 145 L.Ed.2d 282 (1999) (citations omitted).

The officers testified that while looking for the Defendant in one bedroom, they saw the butt of a rifle sticking out from under a pile of clothes. Although the Defendant argued that the clothes had to be moved in order for the officers to see the rifle, the Court finds credible their testimony that the rifle butt was sticking out and thus, in plain view. The Defendant was known by the officers to have a felony record. United States v. Wells, 98 F.3d 808, 809 (4th Cir. 1996). The officers were lawfully present pursuant to an arrest warrant; the rifle was in plain view; and its incriminating character was immediately apparent. Id., at 1109-1110; United States v. Uzenski, 434 F.3d

690, 707 (4th Cir. 2006) (where the police have an original justification for intruding on a person's private property, they can extend that justification to those items whose incriminating nature is immediately apparent); Wells, 98 F.3d at 809-10 (agents properly on premises pursuant to warrant collectively had probable cause to believe weapon found in plain sight was evidence of a crime); Morgan, 972 F.2d 343 at **2 ("The officer also reasonably believed Morgan might be hiding under the bed. Instead they found the shotgun in plain view and properly seized it.").

The second rifle was found when Officer Parker was looking for the Defendant inside an air duct which was large enough to hide a person. [Tr. 151-52]. The duct was a square hole in the wall covered by a grate. [Tr. 156]. The officer removed the grate and looked into the vent, realizing then that it went down into a crawl space underneath the house. [Tr. 152, 156]. He removed the grate cover and looked inside because he thought the Defendant might be hiding inside the vent. [Tr. 152-155]. He reached inside the vent and pulled out a rifle bag and then poked his head and upper body into the vent to look for the Defendant. [Tr. 155]. The officer knew from the touch of the bag that it was a rifle bag containing a rifle because he owns several himself. [Tr. 157]. Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d

334 (1993), established the "plain feel" doctrine; that is, "if the contour or mass of an object makes its identity immediately apparent, the officer may lawfully seize it." <u>United States v. Raymond</u>, 152 F.3d 309, 312 (4th Cir. 1998). The Defendant does not object to the officer's testimony that he knew the bag contained a rifle; his only objection is to the fact that the officer removed the air vent grate in order to look inside for the Defendant. Thus, he claims the rifle was not "in plain view." No cases are cited in support.

Officer Parker testified that the only reason he removed the grate was to look for the Defendant. He specifically testified that he was not looking for contraband. The Court finds his testimony credible and thus rejects the Defendant's objection.

**The issue of whether the Magistrate Judge erred in concluding the arrest warrant was valid.**

As previously noted, the warrant issued for the Defendant was a misdemeanor arrest warrant pursuant to North Carolina law. N.C.G.S. §15A-304 provides in pertinent part:

> A judicial official may issue a warrant for arrest only when he is supplied with sufficient information, supported by oath or affirmation, to make an independent judgment that there is probable cause to believe that a crime has been committed and that the person to be arrested committed it. The information must

24

be shown by one or more of the following:

> (1) Affidavit; [or]
>
> (2) Oral testimony under oath or affirmation before the issuing official[.]

N.C.G.S. §15A-304(d).

During the suppression hearing, it came to light that Officer Helms, the officer who obtained the warrant, had failed to provide an affidavit to the issuing state magistrate, relying instead on the papering packet verification form. In fact, that verification form was lost at some point during the arrest. Officer Helms testified at some length during the hearing about his actions in obtaining the warrant. He testified that he did not provide a written affidavit to the magistrate, only the verification form. He did not testify that he made an oath or affirmation before the state magistrate when he obtained the warrant because he was not asked that question by the Government. Subsequent to the hearing, the Government submitted Officer Helms' affidavit in which he stated (1) he submitted only the verification form to the state magistrate; but (2) he took that form to the state magistrate and "provided him with an oral summary of the investigation that I had previously provided to the ADA as well as the verification form, and then swore under oath to the Magistrate that all information I was providing to him was true and accurate to the best of my

knowledge." [Doc. 37-2].   The Magistrate Judge relied on this affidavit in concluding that the warrant was properly issued.

The Defendant makes a cursory argument that the Magistrate Judge should not have considered Officer Helms' affidavit because it was not submitted with the Government's supplemental brief, citing Federal Rule of Criminal Procedure 47.  Based on the argument that the warrant was invalid, raised by the Defendant for the first time during the hearing, the Magistrate Judge gave the parties an opportunity to brief the issue.  In briefing that issue, the Defendant argued "Officer Helms did NOT supply an affidavit, *nor did he testify under oath or affirmation*." [Doc. 34, at 4] (emphasis provided).  This was not an argument previously made by the Defendant.  In response, the Government provided an affidavit from Officer Helms in which he stated that he did testify under oath or affirmation.

Rule 47 actually provides that the "moving party" must serve a supporting affidavit with the motion whereas the "responding party" must serve any opposing affidavit one day prior to a hearing, "unless the court permits later service."  Fed.R.Crim.P. 47(d).  The Magistrate Judge accepted Officer Helms' affidavit in support of his conclusion, obviously having permitted its service.   The Court rejects this cursory objection.

The Defendant also objects on the basis of <u>Crawford v. Washington</u>, 541 U.S. 36, 68-69, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), arguing that the admission of the affidavit into evidence in connection with the motion to suppress violated his Sixth Amendment right to cross-examine Officer Helms on this issue. The Defendant states that there is no Supreme Court or Fourth Circuit precedent on the issue of whether <u>Crawford</u> applies in the context of a suppression hearing. He nonetheless argues that the Magistrate Judge committed error by considering the affidavit without providing him an opportunity to cross-examine Officer Helms.

The Court has a practical solution to this issue. Should the Defendant desire, a hearing will be conducted on the morning of the first day of trial at which time the Defendant will be provided an opportunity to cross-examine Officer Helms as to this issue. If the Defendant does not desire to cross-examine Officer Helms, he must file a written waiver of that opportunity.

In view of the impending trial for which both sides must prepare, the Court will take the unusual step of advising the parties that if the Defendant waives his right to cross-examination and the Court is left with the current record, it is the Court's inclination to find that the arrest warrant was validly issued. In the event that the Defendant chooses to cross-examine Officer

Helms about the contents of his affidavit, the Court will issue its ruling as to this objection from the bench immediately after the hearing.

**The issue of whether the Magistrate Judge erred in applying the good faith exception.**

The Defendant's last objection is to the Magistrate Judge's conclusion that the good faith exception to the exclusionary rule should apply. The good faith exception provides that if an officer reasonably relied on a warrant issued by a neutral and detached magistrate, evidence obtained during execution of the warrant may be admissible even if the warrant is later found to be defective. United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The Defendant's argument is that Officer Helms failed to supply an affidavit in support of his request for a misdemeanor warrant, in violation of state law, and the resulting warrant was invalid. His objection to the Magistrate Judge's recommendation is limited to his claim that because it was the officer who was at fault for the claimed invalidity of the warrant, the good faith exception does not apply.

The Defendant's argument overlooks the affidavit provided by Officer Helms in which he attested that he presented all the information necessary to establish probable cause to the state magistrate under oath. [Doc. 37-2].

Defense counsel urges the Court to "view" that affidavit "with caution" because it was provided after the hearing. During the suppression hearing, no question was put to Officer Helms by Government counsel or defense counsel about whether he provided information to the state magistrate under oath. He later testified, however, that he in fact presented the information to the state magistrate under oath.

In the event that the Defendant waives his opportunity to cross-examine Officer Helms at a hearing immediately prior to trial and the Court is left with the current record, it is the Court's inclination to find and conclude that the warrant was supported by probable cause and was not defective. As a result, application of the good faith exception would be unnecessary. In the event that the Defendant chooses to conduct such a cross-examination, however, the Court will issue its ruling as to this objection from the bench immediately after the hearing.

**ORDER**

**IT IS, THEREFORE, ORDERED** that, except as noted herein, the Defendant's Objections to the Memorandum and Recommendation of the Magistrate Judge are overruled and the Recommendations of the Magistrate Judge are hereby adopted and the Motion to Suppress Evidence [Doc. 11], except as noted herein, is hereby **DENIED**.

**IT IS FURTHER ORDERED** that on or before five business days from entry of this Order, defense counsel shall advise the Court in writing whether cross-examination of Officer Helms is desired prior to trial.

Signed: September 28, 2009

Martin Reidinger
United States District Judge