# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### CIVIL CASE NO. 3:13-CV-592-MR
### CRIMINAL CASE NO. 3:09-CR-19-MR

| | |
|---|---|
| CHARLES ALLEN HALL, ) | |
| ) | |
| Petitioner, ) | |
| vs. ) | **MEMORANDUM OF** |
| ) | **DECISION AND ORDER** |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255, [CV Doc. 1];[1] his Memorandum in support of his 2255 Motion, [CV Doc. 1-1]; his Supplemental 2255 Motion, [CV Doc. 2]; his Memorandum in support of his Supplemental 2255 Motion, [CV Doc. 2-1]; and his Motion to Supplement his 2255 Motion. [CV Doc.14]. The Government filed a Response to Petitioner's first four filings [CV Doc. 11], and Petitioner filed a Reply thereto. [CV Doc. 12]. Petitioner is also requesting the appointment of counsel. [CV Doc. 13].

_____

[1] Because this Memorandum and Order must reference documents contained on the docket in both Petitioner's civil case and in his criminal case, the Court will cite to documents from Petitioner's civil case with the prefix "CV" and from his criminal case with the prefix "CR."

## PROCEDURAL HISTORY

Petitioner was named in a single count Bill of Indictment filed in this District on February 17, 2009. [CR Doc. 1]. The indictment charged Petitioner with being a felon in possession of firearm, in violation of 18 U.S.C. § 922(g)(1). [Id.]. The Petitioner proceeded to trial on October 20, 2009, and was convicted by a jury. [CR Doc. 55]. On August 25, 2010, the Court conducted the Petitioner's sentencing hearing. The Court imposed an imprisonment term of 188 months, a supervised release term of 36 months, a special assessment of $100, and an order to reimburse the costs of appointed counsel. [CR Doc. 71].

On September 15, 2010, the Petitioner appealed to the Fourth Circuit. [CR Doc. 73]. By an unpublished opinion rendered October 15, 2012, the court of appeals affirmed the Petitioner's conviction and sentence but vacated this Court's reimbursement order. [CR Doc. 86]. The Petitioner thereafter sought a Writ of Certiorari from the Supreme Court as to the adverse rulings on the remainder of his appeal but his request was denied on May 28, 2013. Hall v. United States, 133 S. Ct. 2734 (2013) (certiorari denied). Petitioner then instituted the present habeas matter on October 23, 2013. [CV Doc. 1; CR Doc. 89].

# FACTUAL BACKGROUND

The Fourth Circuit's opinion from Petitioner's appeal sets forth the pertinent factual background succinctly and is reproduced below.

On April 8, 2008, Officer Calvin Helms of the Charlotte-Mecklenburg Police Department went with three other officers to Hall's Charlotte, North Carolina residence to arrest him for a misdemeanor charge arising from the purported theft of catalytic converters. Officer Helms was aware that Hall had a lengthy criminal history, including fifteen felony convictions and one hundred arrests. Upon arriving at Hall's residence, the officers recognized his vehicle in the driveway, as some of the officers had seen Hall driving the vehicle in the past. After the officers knocked and announced their presence at both the front and back doors, a man who the officers knew was not Hall, and who was later identified as Thomas Phillips, opened the back door. An officer asked Phillips whether Hall was there. Phillips mumbled something incomprehensible in response--possibly "hold on" or "no"--before shutting the door. The officers continued knocking but received no further response. Officer Helms then contacted his supervisors and apprised them of the situation. In light of Hall's criminal history, the officers decided to request the assistance of a SWAT team to execute the arrest warrant.

Over the next few hours, a SWAT team deployed to Hall's residence, set up a command post, and used loudspeakers to call for Hall to come out of the house. Hall did not come out, but four other occupants emerged: Hall's wife, Sheena Hall; her two children; and Phillips. Ms. Hall told the officers that her husband was not inside. According to the officers, Phillips told them that Hall was in the house. At the later suppression hearing, Phillips disputed that he told the officers Hall was inside; however, the district court credited the officers' testimony. When Hall did not respond or emerge, SWAT team members entered the house and searched for Hall but did not find him.

During the search, the officers located two firearms, including a rifle that had been placed in an air duct large enough

for a person to fit inside that ran underneath the house. An officer had opened the air duct to see if Hall was hiding in it. That officer immediately "located a brown or tan rifle bag," about three feet long, six to eight inches high, and narrowed in a triangular manner on one end, laying lengthwise down the duct. He pulled the bag out of the air duct and set it on the ground. At trial, the officer testified that he referred to it as a "rifle bag" because he owns several such bags himself. He further described it as "just a large canvas or cloth like bag that's long enough for a rifle to fit into with a strap across the top," and explained that "[y]ou could feel the weight of it being heavier on one side versus the other when I lifted it out, typical of a rifle bag with a rifle inside of it. I have several at home, same exact set up[.]"  Other officers later opened the bag and found a rifle.

After the initial search, one of the officers interviewed Phillips again, and reported that Phillips was adamant that Hall was inside. The SWAT team then conducted a second search, and officers located Hall in a crevice inside the attic wall. An officer later testified at trial that he saw Hall and said, "Let me see your hands," whereupon Hall swore at him and spat at him and other officers.

[CR Doc. 86 at 3-6 (appellate joint appendix references omitted)].

On October 23, 2013, Petitioner filed the instant motion pursuant to 28 U.S.C. § 2255.  [CV Doc. 1].  In his motion and supplemental motion, and in his memoranda in support thereof, the Petitioner's pro se filings raise several claims and contain many redundant arguments; Petitioner's Supplemental 2255 Motion and Supplemental Memorandum contain predominantly the same arguments as his Original 2255 Motion and Memorandum.  Further, some of the issues he has raised in this action were briefed and resolved in his criminal appeal or should have been brought initially in that appeal.

Finally, Petitioner filed a motion to "Supplement" to his 2255 Motion raising a claim based on a recent decision by the Supreme Court. The Court will list the Petitioner's claims in the order they were filed.

### A. Original 2255 Motion. [CV Doc. 1].

In Ground One of his original Motion, Petitioner attacks his conviction and sentence based upon several allegations that his trial counsel provided him ineffective assistance. [CV Doc. 1 at 4].

### B. Memorandum Supporting Original 2255 Motion. [CV Doc. 1-1].

Attached to Petitioner's 2255 Motion was a "Memorandum of Law" wherein Petitioner argues issues entirely different from those set out in his Original 2255 Motion. The Court will thus treat this Memorandum as simply a continuation of Petitioner's 2255 Motion. Petitioner's Memorandum contains six arguments.

1. Petitioner begins by alleging that his prior South Carolina burglary conviction failed to specify the statute violated and, without such information, his prior conviction cannot be used as an Armed Career Criminal Act predicate "violent felony." [CV Doc. 1-1 at 4-6; 17-20].

2. Petitioner next asserts that, because none of his prior felony convictions used as predicates under the Armed Career

Criminal Act were alleged in the indictment, the Armed Career Criminal Act sentence imposed upon him is unconstitutional. [Id. at 7-9].

3.     Petitioner claims that two of his prior convictions used for Armed Career Criminal Act enhancement purposes, Breaking and Entering and Aiding and Abetting Assault with Deadly Weapon on Officer, did not occur on occasions different from one another and therefore constitute only one predicate "violent felony." [Id. at 10-12].

4.     Petitioner follows with a related claim that the Court improperly determined that his prior convictions for Breaking and Entering and Aiding and Abetting Assault with Deadly Weapon on Officer were separate Armed Career Criminal Act predicates by consulting an unauthorized document. [Id. at 12-17].

5.     Petitioner next claims that the Armed Career Criminal Act is unconstitutional because there is no limitation upon the age of prior convictions used for predicate offenses. [Id. at 19-20].

6.     Finally, Petitioner ends his Memorandum with the assertion that his Armed Career Criminal predicates are infirm because North Carolina automatically restores a felon's right to possess firearms 5 years after any conviction. [Id. at 20-21].

**C.     Supplemental 2255 Motion. [CV Doc. 2].**

In his Supplemental 2255 Motion, Petitioner reiterates a number of his previous claims.

1.     Under Ground One, Petitioner reasserts that his trial counsel was ineffective for various reasons.  [CV Doc. 2 at 4; 14-16].

2.     Under Ground Two, Petitioner reasserts that his prior South Carolina burglary conviction failed to specify the statute violated and, without such information, his prior conviction cannot be used as an Armed Career Criminal Act predicate "violent felony."  [Id. at 5; 16].

3.     Under Ground Three, Petitioner reasserts that, because none of his prior felony convictions used as predicates under the Armed Career Criminal Act were alleged in the indictment, the Armed Career Criminal Act sentence imposed upon him is unconstitutional. [Id. at 7; 17].

4.     Under Ground Four, Petitioner reasserts that the Court improperly determined that his prior convictions for Breaking and Entering and Aiding and Abetting Assault with Deadly Weapon on Officer were separate Armed Career Criminal Act predicates by consulting an unauthorized document.  [Id. at 8; 17].

5.     Under Ground Five, Petitioner reasserts that two of his prior convictions used for Armed Career Criminal Act enhancement purposes, Breaking and Entering and Aiding and Abetting Assault with Deadly Weapon on Officer, did not occur on occasions different from one another and therefore constitute only one "violent felony."  [Id. at 10; 18-20].

### D.     Memorandum Supporting Supplemental 2255 Motion. [CV Doc. 2-1].

Petitioner's Memorandum in support of his Supplemental 2255 Motion contains six arguments, all of which are redundant.

1.     Petitioner begins by alleging that his prior South Carolina burglary conviction failed to specify the statute violated and, without such information, his prior conviction cannot be used as an Armed Career Criminal Act predicate "violent felony." [CV Doc. 2-1 at 3-7].

2.     Petitioner next asserts that, because none of his prior felony convictions used as predicates under the Armed Career Criminal Act were alleged in the indictment, the Armed Career Criminal Act sentence imposed upon him is unconstitutional.  [Id. at 7-11].

3.     Petitioner claims that two of his prior convictions used for Armed Career Criminal Act enhancement purposes, Breaking and Entering and Aiding and Abetting Assault with Deadly Weapon on

8

Officer, did not occur on occasions different from one another and therefore constitute only one "violent felony." [Id. at 10-11; 15-19].

4. Petitioner follows with a related claim that the Court improperly determined that his prior convictions for Breaking and Entering and Aiding and Abetting Assault with Deadly Weapon on Officer were separate Armed Career Criminal Act predicates by consulting an unauthorized document. [Id. at 11-15].

5. Petitioner next claims that the Armed Career Criminal Act is unconstitutional because there is no limitation upon the age of prior convictions used for predicate offenses. [Id. at 19-20].

6. Finally, Petitioner ends this Memorandum with the assertion that his Armed Career Criminal predicates are infirm because North Carolina automatically restores a felon's right to possess firearms 5 years after any conviction. [Id. at 20-21].

**E.    Motion to Supplement 2255 Motion.  [CV Doc. 14].**

Petitioner's motion to supplement his 2255 Motion contains one claim. He asserts that his Aiding and Abetting Assault with Deadly Weapon on Officer conviction used as a predicate to support his Armed Career Criminal enhancement is now infirm based on the Supreme Court's recent decision in Johnson v. United States, 135 S. Ct. 2551 (2015).

## STANDARD OF REVIEW

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, sentencing courts are directed to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings" in order to determine whether a petitioner is entitled to any relief. If a petitioner's motion is not dismissed after this initial review, the Court must direct the Government to respond. <u>Id.</u> The Court must review the Government's answer, if any, in order to determine whether an evidentiary hearing is warranted under Rule 8(a). Having considered the record in this matter, the Court finds that it is clear Petitioner is not entitled to relief on any claim with the possible exception of his ineffective assistance of counsel claim. The Court concludes, therefore, that all of Petitioner's claims, except his ineffective assistance of counsel claim, can be resolved without an evidentiary hearing. <u>Raines v. United States</u>, 423 F.2d 526, 529 (4th Cir. 1970).

## DISCUSSION

As noted above, some of Petitioner's claims set forth in his various filings were resolved by the Fourth Circuit in Petitioner's direct appeal and many other claims should have been brought by Petitioner in that appeal. In particular, the first and third arguments in Petitioner's two Memoranda are

the same arguments Petitioner asserts in Ground Two and Ground Five of his Supplemental Motion, respectively, and both were addressed by the Fourth Circuit. First, the appellate court concluded that Petitioner's South Carolina burglary conviction qualified as a predicate offense under the Armed Career Criminal Act.[2] [CR Doc. 86 at 20]. Second, the appellate court concluded that this Court was correct in its determination that Petitioner's Breaking and Entering conviction and his Aiding and Abetting Assault with Deadly Weapon on Officer conviction occurred on occasions different from one another.[3] [Id. at 21]. In a § 2255 proceeding, a petitioner will not be allowed to recast, under the guise of a collateral attack, questions fully considered on direct appeal. Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976); see also United States v. Bell, 5 F.3d 64, 66 (4th Cir. 1993) (holding the law of the case doctrine forecloses relitigation of issues expressly or impliedly decided by the appellate court) (internal citation omitted). Petitioner's claims on these two issues are dismissed.

Petitioner raises many claims in this matter that should have been addressed to the court of appeals in his direct appeal. In particular, the

---

[2] This was Petitioner's first argument in his two Memoranda and Ground Two in his Supplemental Motion.

[3] This was Petitioner's third argument in his two Memoranda and Ground Five in his Supplemental Motion.

second, fourth, fifth, and sixth arguments in Petitioner's two Memoranda and the arguments Petitioner asserts in Ground Three and Ground Four of his Supplemental Motion should have been brought to the attention of the Fourth Circuit in the first instance following Petitioner's conviction. Since these claims were not raised on direct appeal, they are procedurally defaulted. "It is well established that where an appeal was taken from a conviction, the judgment of the reviewing court is res judicata as to all issues actually raised, and those that could have been presented but were not are deemed waived." Teague v. Lane, 489 U.S. 288, 297 (1989) (internal citation and quotation omitted). See also, Bousley v. United States, 523 U.S. 614, 621 (1998) (habeas review is an "extraordinary remedy" and is not a proper substitute for an appeal). Petitioner is barred from raising the defaulted claims in a federal habeas corpus proceeding unless he can show cause for the default and prejudice resulting therefrom. Teague, 489 U.S. at 298. Petitioner does not attempt to show cause for his default. On two of these forfeited claims, however, Petitioner attempts to side-step the cause requirement. Petitioner attempts do so by asserting in his Reply that precedent issued subsequent to the Fourth Circuit's decision in his direct appeal altered the legal landscape in a way that benefits him on these claims. [CV Doc. 12 at 4-5; 7-10]. The Court will address both of these.

First, with regard to Petitioner's claim that the Court improperly consulted an unauthorized document when determining that two of his prior convictions were separate predicates,[4] Petitioner cites to two cases decided after his appeal, to wit: United States v. Boykin, 669 F.3d 467 (4th Cir. 2012) and Kirkland v. United States, 687 F.3d 878 (7th Cir. 2012). [CV Doc. 12 at 4]. While these two cases indeed *reinforce* the requirement that district courts consult only documents from Shepard-approved sources,[5] they add nothing new to that calculus. Boykin, in fact, cites specifically to United States v. Letterlough, 63 F.3d 332 (4th Cir. 1995), which contained the five factors this Court analyzed at Petitioner's sentencing hearing to conclude Petitioner committed offenses on separate occasions. See Boykin, 669 F.3d at 470 ("Occasions" are "those predicate offenses that can be isolated with a beginning and an end — ones that constitute an occurrence unto themselves[,]" quoting Letterlough, 63 F.3d at 335). The gravamen of Petitioner's argument on this claim is that defense counsel recited facts contained in a police report during Petitioner's sentencing hearing that the Court later took into consideration on one Letterlough factor. [CR Doc. 80 at

---

[4] The Petitioner's claim in this regard is contained in the fourth argument set forth in both of his Memoranda and Ground Four of his Supplemental 2255 Motion.

[5] Shepard v. United States, 544 U.S. 13 (2005).

12]. Petitioner, however, failed to pursue on appeal his claim that the Court relied on a document not <u>Shepard</u>-approved and nothing in either <u>Boykin</u> or <u>Kirkland</u> excuses Petitioner's default or assists Petitioner further regarding such claim. Petitioner's argument on this issue is without merit.

Second, with regard to Petitioner's claim that his Armed Career Criminal sentence is unconstitutional because none of his prior felony convictions used as predicates were alleged in the indictment,[6] Petitioner cites to two Supreme Court cases decided after his appeal, to wit: <u>Alleyne v. United States</u>, 133 S. Ct. 2151 (2013) [CV Doc. 1-1 at 1], and <u>Descamps v. United States</u>, 133 S. Ct. 2276 (2013) [CV Doc. 12 at 7]. <u>Descamps</u> simply defines the circumstances under which a district court may apply the modified categorical approach when a defendant is convicted of a divisible offense. The Petitioner's <u>Decamps</u> argument is resolved below in the Court's discussion of his claim under the Supreme Court's decision this term in <u>Johnson v. United States</u>. The Court thus turns to Petitioner's argument regarding <u>Alleyne</u>.

In overruling <u>Harris v. United States</u>, 536 U.S. 545 (2002), <u>Alleyne</u> rejected any distinction, for Sixth Amendment purposes, between facts that

---

[6] The Petitioner's claim in this regard is contained in the second argument set forth in both of his Memoranda and Ground Three of his Supplemental 2255 Motion.

increase a statutory maximum sentence and those that increase only a statutory minimum sentence. As the Supreme Court held in Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), any "facts that increase the prescribed range of penalties to which a criminal defendant is exposed" are elements of the crime and thus the Sixth Amendment provides defendants with the right to be charged with those facts and to have a jury find those facts beyond a reasonable doubt.  The Petitioner's three prior convictions, which were used for purposes of enhancement under 18 U.S.C. § 924(e), were never recited in Petitioner's indictment nor submitted to the jury for consideration.  This may appear on the surface to be a violation of Apprendi. However, the principle established by Apprendi, and the Apprendi decision itself, recognized a narrow exception to the general rule for the fact of a prior conviction, as mandated by Almendarez-Torres v. United States, 523 U.S. 224 (1998).  Apprendi, 530 U.S. at 489. "*Other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  Id. (emphasis added).   The Supreme Court in Alleyne expressly left untouched the relationship between Apprendi and Almendarez–Torres.  Alleyne, 133 S. Ct. at 2160 n.1.  Consequently, the Constitution does not require that Petitioner's prior convictions used as

predicates under the Armed Career Criminal Act be recited in the indictment as he insists. Petitioner's argument on this issue is without merit.

Petitioner's most recent claim, filed July 21, 2015 as his motion to supplement his 2255 Motion, raises an argument based upon the Supreme Court's recent decision in <u>Johnson v. United States</u>, 135 S. Ct. 2551 (2015) (herein <u>Johnson I</u>).  He asserts that his conviction for Aiding and Abetting Assault with Deadly Weapon on Officer "is counted as a violent offense, only under the residual clause of the ACCA, [and] the defendant, therefore, argues that, in light of the <u>Johnson</u> decision, his state convictions [sic] for Aiding and Abetting Assault, can no longer count as a violent felony for the purposes of an ACCA enhancement[.]"  [CV Doc. 14 at 2].  Petitioner, however, offers no analysis of the <u>Johnson I</u> decision nor any additional authority in support of his claim.

Petitioner correctly points out the <u>Johnson I</u> decision held that the residual clause, contained in the definition of "violent felony"[7] under the Armed Career Criminal Act, was unconstitutionally vague.  "We are

---

[7] The Armed Career Criminal Act defines "violent felony" as follows: "any crime punishable by imprisonment for a term exceeding one year ... that —
(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
(ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*." 18 U.S.C. § 924(e)(2)(B) (emphasis added). The residual clause is the italicized phrase at the end of subsection 924(e)(2)(B)(ii).

convinced that the indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice to defendants and invites arbitrary enforcement by judges. Increasing a defendant's sentence under the clause denies due process of law." <u>Johnson I</u>, 135 S. Ct. at 2557. From the Supreme Court's holding in <u>Johnson I</u> invalidating the residual clause, Petitioner makes the quantum leap that his Aiding and Abetting Assault conviction, <u>ipso facto</u>, is disqualified as a violent felony under the Armed Career Criminal Act. Petitioner, however, has neglected several important, intermediate steps.

To begin, Petitioner assumes from the outset that his Aiding and Abetting Assault conviction qualified as a predicate under the residual clause. Since that conviction does not equate to any of the four listed offenses (burglary, arson, or extortion, or involves the use of explosives), it must have qualified under either the elements clause of § 924(e)(2)(B)(i) or the residual clause of § 924(e)(2)(B)(ii). Since the residual clause is no longer a viable option for evaluating predicate offenses, the Court will examine the elements of the offense Petitioner aided and abetted.[8]

---

[8] The Supreme Court has held that a person who aids and abets an offense falls, like a principal, within the scope of that offense. <u>Gonzales v. Duenas-Alverez</u>, 549 U.S. 183, 189 (2007). Accordingly, the Court will consider the offense Petitioner aided and abetted.

The predicate at issue is listed in paragraph 34 of Petitioner's Presentence Report and described there as "Aid and Abet (Assault with Deadly Weapon on Officer)." [CR Doc. 66 at 7]. Prior to Petitioner's sentencing hearing, the Government filed a sentencing memorandum which included as Exhibit 3 a copy of Petitioner's state Indictment and Judgment regarding this offense. [CR Doc. 69-3]. Petitioner's state Judgment indicates that the assault offense committed was in violation of N.C. Gen. Stat. § 14-34.2. Section 14-34.2, in pertinent part, makes it a felony for any person to commit an assault with a firearm or any other deadly weapon upon an officer or employee of the State or any political subdivision of the State. Id. While the North Carolina Supreme Court has not spoken on the issue, the North Carolina Court of Appeals has held that the elements of this offense are satisfied when a person: (1) commits an assault; (2) with a firearm or other deadly weapon; (3) on a government official; (4) who is performing a duty of the official's office. State v. James, 224 N.C.App. 164, 169, 735 S.E.2d 627, 630 (2012). While this offense appears at first blush to be one subject to a straight forward analysis using the Supreme Court's categorical approach, North Carolina law is not so simple. As the Fourth Circuit recently explained in United States v. Vinson, --- F.3d ----, No. 14-4078 (4th Cir. July 21, 2015), North Carolina law defines "assault" through alternate elements resulting in

three separate assault offenses. Slip op. at 23. In <u>Vinson</u>, the Fourth Circuit construed North Carolina law, in the process of analyzing 18 U.S.C. § 922(g)(9), and concluded that, because North Carolina recognizes three independent "assault" offenses, the "assault" element included within the predicate necessary to sustain a § 922(g)(9) conviction makes the predicate divisible and subject to the modified categorical approach under <u>Descamps</u>.

> First, under what can be called the "attempted battery" formulation, an assault can be committed by "an overt act or an attempt, or the unequivocal appearance of an attempt, with force and violence, to do some immediate physical injury to the person of another, which show of force or menace of violence must be sufficient to put a person of reasonable firmness in fear of immediate bodily harm." [<u>State v. Roberts</u>, 270 N.C. 655, 658, 155 S.E.2d 303, 305 (1967) (internal quotation marks omitted).] Second, under the "show of violence" formulation, an assault can be committed by "a show of violence accompanied by reasonable apprehension of immediate bodily harm or injury on the part of the person assailed which causes him to engage in a course of conduct which he would not otherwise have followed." <u>Id.</u> Finally, under the "completed battery" formulation, an assault conviction may be premised on proof of a battery. See <u>In re K.C.</u>, 742 S.E.2d 239, 243 (N.C. Ct. App. 2013) ("When a battery has occurred, assault may be proven by a finding of either assault or battery on the victim."); <u>State v. Britt</u>, 154 S.E.2d 519, 521 (N.C. 1967) ("A battery always includes an assault, and is an assault whereby any force is applied, directly or indirectly, to the person of another.").

* * * * * * * * * * *

Preliminarily, we note that each formulation of the crime involves a different type of conduct – an attempted use of force; a show of violence without even an attempted use of force; and a completed, nonconsensual use of force against another

person. Each of the formulations has its own unique set of elements, and each set of elements directs the jury's focus to different aspects of the crime – the attempted-battery formulation of assault "places emphasis on the intent or state of mind of the person accused," Roberts, 155 S.E.2d at 305, while the show-of-violence form "places the emphasis on the reasonable apprehension of the person assailed," id., and the completed-battery form focuses "not [on] the hostile intent of the defendant, but rather [on] the absence of consent to the contact on the part of the plaintiff," In re K.C., 742 S.E.2d at 244 (internal quotation marks omitted). That the kind of conduct proscribed by the different formulations of assault differs quite significantly suggests that, for purposes of our § 922(g)(9) analysis, the different formulations should be treated as separate crimes warranting the use of the modified categorical approach.

Vinson, slip op. at 10; 13-14.

As the Fourth Circuit has explained, "the modified categorical approach applies only in cases where the state crime is 'divisible' because it consists of multiple, alternative elements creating several different crimes, some of which would match the generic federal offense and others that would not." Vinson, slip op. at 11 (internal citations and quotation marks omitted); Omargharib v. Holder, 775 F.3d 192, 198 (4th Cir. 2014) (a crime is divisible under Descamps only if it is defined to include multiple alternative elements (thus creating multiple versions of a crime), as opposed to multiple alternative means (of committing the same crime)). This same analysis is applicable to the case at bar since a conviction under N.C. Gen. Stat. § 14-

34.2. demands proof of the same element of "assault," in one of its three iterations, at issue in Vinson.

Taking the last part of the divisibility definition first, this Court must determine whether "at least one of the categories into which the [crime] may be divided constitutes, by its elements, [a qualifying predicate offense]." Vinson, slip op. at 10 (internal citations and emphasis omitted). Given the Supreme Court's decision in Johnson v. United States, 559 U.S. 133 (2010) (herein Johnson II) that question is easily answered in the affirmative.

The Supreme Court, in Johnson II, was called upon to determine whether the Florida felony offense of battery by "[a]ctually and intentionally touch[ing]" another person, Fla. Stat. § 784.03(1)(a), (2) (2003), "has as an element the use ... of physical force against the person of another," under the elements clause of 18 U.S.C. § 924(e)(2)(B)(i) constituting a "violent felony" under the Armed Career Criminal Act, § 924(e)(1).  Johnson II 559 U.S. at 136.  Noting that Florida's highest court had held that the element of "actually and intentionally touching" under Florida's battery law is satisfied by any intentional physical contact, no matter how slight, established a violation, the Supreme Court concluded that Florida's battery offense failed the elements test.  In so holding, the Supreme Court explained:

> We think it clear that in the context of a statutory definition of "violent felony," the phrase "physical force" means violent force

— that is, force capable of causing physical pain or injury to another person. Even by itself, the word "violent" in § 924(e)(2)(B) connotes a substantial degree of force. Webster's Second 2846 (defining "violent" as "[m]oving, acting, or characterized, by physical force, esp. by extreme and sudden or by unjust or improper force; furious; severe; vehement ..."); 19 Oxford English Dictionary 656 (2d ed.1989) ("[c]haracterized by the exertion of great physical force or strength"); Black's 1706 ("[o]f, relating to, or characterized by strong physical force"). When the adjective "violent" is attached to the noun "felony," its connotation of strong physical force is even clearer. See id., at 1188 (defining "violent felony" as "[a] crime characterized by extreme physical force, such as murder, forcible rape, and assault and battery with a dangerous weapon")[.]

Johnson II, 559 U.S. at 140 (internal citation omitted).

Returning to the Petitioner's case, because North Carolina's different theories of assault make the crime divisible, use of the modified categorical approach is proper to consider whether Petitioner's crime of assault by "attempted battery" categorically qualifies as a predicate conviction. The Court concludes that his N.C. Gen. Stat. § 14-34.2 conviction falls into the "attempted battery" formulation of assault. Petitioner's Indictment for that offense states that Petitioner aided and abetted

Johnny Lee Smith in unlawfully, wilfully and feloniously assaulting Officer K.W. Grier, a law enforcement officer of the Mecklenburg County Police Department, with a handgun, which is a deadly weapon, by operating a vehicle in which Johnny Lee Smith was a passenger at the time Johnny Smith fired shots at Officer K.W. Grier. At the time of the assault, said officer was performing the following duty of his office: routine patrol.

[CR Doc. 69-3]. An "attempted battery" assault, as explained above, can be committed by "an overt act or an attempt, or the unequivocal appearance of an attempt, with force and violence, to do some immediate physical injury to the person of another, which show of force or menace of violence must be sufficient to put a person of reasonable firmness in fear of immediate bodily harm." Roberts, 270 N.C. at 658, 155 S.E.2d at 305. This definition and scope of assault necessarily includes a use, attempted use, or threatened use of "violent force" sufficient to satisfy the federal definition of a violent felony under the elements test set forth in 18 U.S.C. § 924(e)(2)(B)(i). The Court concludes that Petitioner's conviction for Aiding and Abetting Assault with Deadly Weapon on Officer satisfies the elements test set forth in 18 U.S.C. § 924(e)(2)(B)(i) and constitutes a "violent felony" under the Armed Career Criminal Act. Petitioner's contention that this predicate conviction is infirm under the Act's residual clause, 18 U.S.C. § 924(e)(2)(B)(ii), is without merit.

Having resolved all of Petitioner's claims with the exception of his ineffectiveness of counsel claim, the Court now turns to Petitioner's various arguments concerning that claim. Petitioner asserts his trial counsel was ineffective by: (1) failing to give him the opportunity to decide whether to go to trial; (2) failing to advise of him of potential penalties "before, during, and

after trial"; (3) leading him to trial based upon faulty legal advice; (4) conducting no investigation into his criminal history; (5) failing to object to the review of improper documents used to establish two sentencing predicates; (6) failing to call his wife and son as witnesses during his trial; (7) failing to review the numerous jail calls he made to his wife; and (8) failing to argue that the firearms found in his house belong to another inhabitant.  [CV Doc. 1 at 4; CV Doc. 2 at 4; 14-16].

For the Court to find ineffective assistance of counsel, Petitioner must demonstrate both that his counsel's performance fell below the standard of objective reasonableness and that the deficient performance was prejudicial to his defense. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). Petitioner's first five assertions call into question the reasonableness of his trial counsel's performance because, before proceeding to trial, she allegedly did not thoroughly investigate his past record, and therefore did not advise him about the potential penalties he faced if convicted by plea versus by a jury.

In the Petitioner's letter to the Court, written approximately four months after his trial ended but prior to his sentencing hearing, Petitioner stated that his trial counsel did not advise him regarding the potential time he faced if convicted.  He alleges his trial counsel "failed to consult with [me] on the

amount of incarceration time I was to be facing if I were to accept a plea bargain, nor did she inform me on the amount of incarceration time I were to be facing if I were to lose trial[.]"  [CR Doc. 62 at 1 (spelling and grammatical errors in original)].   At the Status of Counsel hearing held before the Magistrate Judge, which was prompted by the Petitioner's letter to the Court, the Petitioner reiterated his assertions that trial counsel's failure to discuss potential penalties impacted his fundamental decision-making about the case.

> And then I didn't even know how much time I was facing. I asked her before, during and after the trial how much time I'm going to get if I lose this case. I mean, she could have said you're getting 20 years. I would have said, well, no, we ain't even going to trial. Or she could have said you'll get a weekend. Well, let's try it. So I mean, I went in there blind. Totally blind. Didn't know – you know, that's what I'm saying.

[CR Doc. 83 at 9-10 (sealed)].   At the hearing, Petitioner's counsel responded in part as follows:

> Mr. Hall and I spoke concerning the guidelines, as I always do before trial, and say this is what your guidelines are and this is what's going to happen if you go to trial. No acceptance of responsibility will increase your time. I've even made statements to him concerning armed career criminal, which I don't believe he's armed career criminal and that's one of the reasons I went forward with trial because my concern was if he was armed career criminal, he would be 15 years plus.

[Id. at 17-18].  The Government did not address this issue in its Response.

While Petitioner's trial counsel disputed Petitioner's contention that she never discussed the Guidelines with Petitioner, she conceded that she did not believe he met the criteria for being sentenced as an Armed Career Criminal. Significantly, according to Petitioner's trial counsel, the fact that Petitioner would not be subjected to the Armed Career Criminal enhancement was "one of the reasons [she] went forward with trial[.]" Petitioner claims he was prejudiced[9] in proceeding to trial based on his attorney's incomplete and incorrect legal advice. Trial counsel's statements, based on the cold record before the Court, appear to corroborate Petitioner's contentions that she may have failed to investigate his past record adequately and thereby led him to trial based upon faulty or inadequate legal advice. Based on the statements of Petitioner and his counsel, the Court finds that factual disputes exists regarding Petitioner's ineffective assistance of counsel claim. Barring a clear record indicating that a petitioner is entitled to no relief, § 2255 makes an evidentiary hearing mandatory. 28 U.S.C. § 2255 ("Unless the motion and the files and records of the case *conclusively show* that the prisoner is entitled to no relief, the court shall … grant a prompt

_____

[9] Petitioner's ultimate Guidelines range was 188 to 235 months (TOL 33/CHC IV) and he received a sentence of 188 months. [CR Docs. 67; 71]. Had Petitioner entered a timely plea and accepted full responsibility for his offense, his Guidelines range would have been limited to the statutory mandatory minimum of 180 months (TOL 30/CHC IV – 135 to 168 months, increased to the fifteen-year statutory floor by operation of U.S.S.G. § 5G1.1(b)).

hearing thereon[.]") (emphasis added).  Additionally, because the nature of the factual dispute between the parties necessarily involves the Court making a credibility determination, this matter falls into the "category of petitions … that will require an evidentiary hearing in open court."  <u>Raines</u>, 423 F.2d at 530.

## CONCLUSION

The Court concludes that all of Petitioner's claims, with the exception of his ineffective assistance of counsel claim, should be dismissed. Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, the Court declines to issue a certificate of appealability as to all the dismissed claims since Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (holding that when relief is denied on procedural grounds, a petitioner must establish both that the correctness of the dispositive procedural ruling is debatable, and that the petition states a debatably valid claim of the denial of a constitutional right).

The Court concludes that Petitioner's ineffective assistance of counsel claim should be set for hearing. Pursuant to Rule 8 of the Rules Governing Section 2255 Cases, the Court directs the Magistrate Judge to appoint counsel from the CJA Panel to represent the Petitioner at the evidentiary hearing as Petitioner was previously determined to be indigent and qualified for the appointed counsel at the time of trial and sentencing.

## ORDER

**IT IS, THEREFORE, ORDERED** that Petitioner's Section 2255 Motion to Vacate [CV Doc. 1], as supplemented [CV Docs. 1-1; 2; 2-1; and 14], is **DENIED** in part. All of Petitioner's claims, with the exception of his ineffective assistance of counsel claim, are hereby **DISMISSED**.

**IT IS FURTHER ORDERED** that Petitioner's Motion to Appoint Counsel [CV Doc. 13] is **GRANTED**. The Magistrate Judge is directed to appoint counsel from the CJA Panel to represent Petitioner at his evidentiary hearing with regard to his ineffective assistance of counsel claim.

**FINALLY, IT IS ORDERED** that this matter is tentatively set for an evidentiary hearing during the Court's November, 2015, term with regard to Petitioner's ineffective assistance of counsel claim.

**IT IS SO ORDERED.**

Signed: August 31, 2015

Martin Reidinger
United States District Judge